## UNITED STATES v. WARD.
### SAME v. CIPULLO.
### SAME v. HOGAN.
#### Nos. 9530–9532.

Circuit Court of Appeals, Third Circuit.
Argued April 6, 1948.
Decided May 12, 1948.

John M. Smith, Jr., of Philadelphia, Pa., for appellant Ward.

Henry Weiss, of Philadelphia, Pa., for appellant Cipullo.

John W. Bohlen, of Philadelphia, Pa., for appellant Hogan.

Asher W. Schwartz, Sp. Asst. to Atty. Gen. (Gerald A. Gleeson, U. S. Atty., and Edward A. Kallick, Asst. U. S. Atty., both of Philadelphia, Pa., on the brief), for respondent.

Before GOODRICH, McLAUGHLIN, and O'CONNELL, Circuit Judges.

GOODRICH, Circuit Judge.

Three defendants, Charles Hogan, Thomas B. Ward and Frank Cipullo, were indicted, tried and convicted of the substantive offense of defrauding the United States. 35 Stat. 1095 (1909), 40 Stat. 1015 (1918), 48 Stat. 996 (1934), 52 Stat. 197 (1938), 18 U.S.C.A. § 80. The three were tried together, although indicted separately and all three have appealed.

### I. Charles Hogan.

■ This defendant's case presents a feature not present in the others and may be summarily disposed of first. Since Hogan's conviction, Anthony Martino, the only witness who gave substantial testimony against him has testified in another proceeding that what he said in this case concerning Hogan was false. This is frankly admitted by the attorney for the United States who leaves it to the Court's discretion to determine whether a judgment of acquittal or a new trial should be ordered.

We think that a reversal with an order for a new trial is as far as this Court should go. Martino's testimony was the only substantial evidence against Hogan. Other witnesses mentioned him, but certainly not in any connection which would do more than give rather thin corroboration to Martino's story. However, we have no way of determining, nor is it our business to determine, whether Martino lied while on the stand in the Hogan trial or whether he lied on the stand in the subsequent trial in which he repudiated his first story. If there is thought to be insufficient testimony to convict Hogan it is fully within the power of the prosecution to drop the proceedings. It is for the prosecutor and not for us to determine what further steps should be taken. We, therefore, conclude that a reversal and an order for a new trial is the appropriate action under the circumstances.

### II. Thomas B. Ward and Frank Cipullo.

■ In the course of his charge the Trial Judge commented upon the failure of the defendants to take the stand in their own behalf. He said: "That is another one of their rights as free Americans,—nobody can compel them; they can elect to rest their case without offering that much testimony (snap) and no inference of guilt can be drawn from that fact, that they did not take the stand: * * *."

Then the Judge went on to say: "but, by the same token, you can weigh in your mind the fact that they did not with everything else heretofore said to satisfy you of their guilt." We do not see how any jury could hear this part of a charge or how an appellate court could read it without coming to the conclusion that what the learned Trial Judge told the jury was that defendant did not have to offer any proof of his innocence but that if he did not take the stand the jury could consider that fact along with the prosecution's testimony upon the question of the defendant's guilt. Such a proposition of law is so clearly contrary to the authority in the federal cases[1] that we need do no more than cite

---

[1] Whether the prohibition is due to the V Amendment or a Congressional enactment and the interpretation placed thereon is apparently not finally decided. See Adamson v. People of State of California, 1947, 332 U.S. 46, 50, footnote 6, 67 S. Ct. 1672, 91 L.Ed. 1903, 171 A.L.R. 1223. This matter is, of course, unimportant

former adjudications in which the rule laid down is contrary to that contained in the excerpt from the charge above quoted. Bruno v. United States, 1939, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257; Wilson v. United States, 1893, 149 U.S. 60, 13 S.Ct. 765, 37 L.Ed. 650; see Johnson v. United States, 1943, 318 U.S. 189, 195-199, 63 S.Ct. 549, 87 L.Ed. 704.

Counsel for the defendants seem to have missed this point completely and only bring it to us upon appeal in connection with a matter of less importance. But the language is there in the charge and we know it is there and it seems to us one of those misstatements of law into which all of us sometimes fall. It is, likewise, of substantial importance on the defendants' rights. Ordinarily, unless one complains of a proposition in a charge and gives the Trial Judge a chance to correct it, the reviewing court will not examine the legal accuracy thereof. But the error here is not mere inaccuracy but one "affecting substantial rights" and the omission of counsel to note it does not relieve this Court of its responsibility to do so.[2]

We find another error which we likewise deem fundamental. These men were originally indicted on several counts, one of which was conspiracy. But they had heretofore been convicted for a conspiracy involving the same allegations. In a proceeding which took place before this trial, another District Judge had concluded that the former conviction precluded further prosecution of the conspiracy counts in these indictments.[3] These defendants, therefore, were being tried on substantive charges only. We think that fact was lost sight of during the conduct of this trial.

Over objections by all the defendants testimony was continuously admitted which applied to the course of operations by these defendants through their business name "Marine Welding Company." That testimony covered the whole period of its operations. Now if this had been a conspiracy charge and all these acts and events had occurred during the course of the conspiracy and in furtherance of it, the testimony would have been relevant and proper. But this was not a trial for conspiracy. It was a trial for substantive offenses alleged to have been for payroll padding on particularly named ships. Therefore, the very most that testimony with regard to their operations could be used for, if indeed it was admissible at all, was to present a circumstance from which the jury could find guilty knowledge on the part of these defendants.

Furthermore, at one point in the instructions the judge told the jury that "All three are in or out,—it has not been denied here. The law recognizes that a partnership is an equal distribution, and the law recognizes also knowledge, but in this particular case you must find that these three defendants knowingly and wilfully defrauded the United States government,—ample evidence for you to base that conviction upon."

Later on, at the request of the defendants, he said: "You cannot attribute the knowledge of any one to the other two, or the knowledge of any two to the other one, unless you think they had knowledge." That, of course, is correct. But our conclusion, based upon an examination of the whole transcript of the trial, is that the

for our purpose since in either event the federal courts are constrained to follow the rule that the Judge should not state that the failure of the accused to take the stand can be considered by the jury.

[2] "Rule 52. Harmless Error and Plain Error

\* \* \* \* \* \*

"(b) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Federal Rules of Criminal Procedure, rule 52, 18 U.S.C.A. following section 687. Cf. Hannon v. United States, 3 Cir., 1938,

99 F.2d 933; McAffee v. United States, 1939, 70 App.D.C. 142, 105 F.2d 21.

[3] The defendants both at the trial and here have urged upon us the proposition that the result in their favor on the conspiracy charge in these indictments entitles them to the benefit of the rule of autrefois acquit. But the reason they were not tried on the conspiracy counts here was because they had already been convicted of them (they, in this situation refers to Cipullo and Ward, not Hogan). Their argument is obviously without merit and needs no discussion.

proceedings had been conducted up to that instant on the theory that these men were in partnership and that somehow a partnership in civil matters carried criminal responsibility with it too. That is, that all the individuals, who were partners in an enterprise, were liable to criminal punishment if one partner committed a crime which in any way benefited the partnership. We think that this point is so thoroughly in the case that the last admonition just quoted is not enough to clear up what we think is an erroneous impression created in the proceedings as a whole.

This conclusion makes it unnecessary to go into a number of other points urged upon us by the defendants. Some general comment, however, may be useful when this case again comes to trial.

It was a case which must have been hard to try. There was a mass of testimony produced on behalf of the Government which supported the charges of payroll padding in a most flagrant fashion. There was, likewise, considerable unwillingness on behalf of some of the persons subpoenaed by the Government to tell their stories of the employment or alleged employment by the defendants. Much of their testimony reeks with perjury. The trial lasted many days. Counsel for the defendants, especially one of them, conducted the defense in a particularly exasperating fashion. Every time, or nearly every time, a ruling was made which defense did not like there was a request for the withdrawal of a juror. It was the kind of case which called for all the judicial calm which the presiding judge could bring to it.

We think that on occasions during this trial there was an unfortunate departure from calm and impartiality. While a Trial Judge must insist that proceedings before him be conducted with the decorum and dignity necessary to effect justice, the method to accomplish this objective is not by becoming a party to the contest going on in his courtroom. A Judge of the United States has full power to keep counsel within bounds by other means.

In any event, this trial came to a close with some indications that emotions on the part of both Court and counsel had been rather deeply stirred. We will not perpetuate the memory of incidents that are better forgotten by reciting them in detail.

But for the errors in law above discussed the judgments will be reversed and the cases remanded for further proceedings not inconsistent with this opinion.